IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:10CV533-S |
| | ) | |
| KEVIN D. COGAN; EDWYNN | ) | |
| BURCKLE; GEORGE E. CLARK; | ) | |
| DORIS COGAN; A. BAYUS, INC. | ) | |
| d/b/a BAYUS-EVOLA | ) | |
| ARCHITECTS; SCOTT HALL, | ) | |
| EXECUTOR FOR ESTATE OF | ) | |
| JAMES A. HALL d/b/a JAMES A. | ) | |
| HALL BUILDER d/b/a HALL | ) | |
| CONTRACTING d/b/a HALL | ) | |
| CONSTRUCTION COMPANY; | ) | |
| MINDEL, SCOTT & ASSOCIATES, | ) | |
| INC.; and A. STANLEY WILLETT d/b/a | ) | |
| WILLETT ENGINEERING COMPANY; | ) | |
| | ) | |
| Defendants. | ) | |

## CONSENT ORDER

## I. INTRODUCTION

**A.      Background**

1.      Defendants Kevin D. Cogan, Edwynn Burckle, Scott Hall, Executor for Estate of James A. Hall, George E. Clark, Doris Cogan, A. Bayus, Inc. d/b/a Bayus-Evola Architects, Mindel, Scott & Associates, Inc., and A. Stanley Willett ("Defendants"), agree to the terms of this Consent Order, resolving this action filed by Plaintiff United States.

2.      This action is brought by the United States to enforce provisions of the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601 - 3619.  Specifically, the United States' Complaint alleges that Defendants have engaged in a pattern or practice of discrimination against persons with disabilities and have denied rights to a group of persons because of disability by failing to design and construct Park Place Apartments ("PPA"), located in Louisville, KY, with the features of accessible and adaptive design and construction required by subsections 804(f)(1), 804(f)(2) and 804(f)(3)(C) of the FHA, 42 U.S.C. §§ 3604(f)(1), (f)(2), and (f)(3)(C).  For purposes of this Consent Order, the United States and Defendants agree that PPA is subject to

the accessible design and construction requirements of the FHA, 42 U.S.C. §§ 3604(f)(1), (f)(2), and (f)(3)(C).

**B.     Defendants**

3.     Defendants Kevin D. Cogan, Edwynn Burckle, and George E. Clark operated a general partnership organized and existing in the state of Kentucky under the assumed name of New Cut Partnership and whose address is or was 136 St. Matthews Avenue, Louisville, KY 40207.  Defendants Kevin D. Cogan, Edwynn Burckle, and George E. Clark d/b/a New Cut Partnership, were owners of PPA, and they were involved in the design and construction of PPA.

4.     Defendants Kevin D. Cogan, Edwynn Burckle, James A. Hall and George E. Clark operated a general partnership organized and existing in the state of Kentucky under the assumed name of Park Place Apartments Partnership and whose address is or was 136 St. Matthews Avenue, Louisville, KY 40207.  Defendants Kevin D. Cogan, Edwynn Burckle, James A. Hall, and George E. Clark d/b/a Park Place Apartments Partnership were owners of PPA, and they were involved in the design and construction of PPA.

5.     Defendants Kevin D. Cogan, Edwynn Burckle, James A. Hall, and Doris Cogan operated a general partnership organized and existing in the state of Kentucky under the assumed names of Park Place Apartments Partnership and Park Place Apartments IV Partnership and whose address is or was 136 St. Matthews Avenue, Louisville, KY 40207.  Defendants Kevin D. Cogan, Edwynn Burckle, James A. Hall, and Doris Cogan d/b/a Park Place Apartments Partnership and d/b/a Park Place Apartments IV Partnership are or were owners and/or operators of PPA, and they were involved in the design and construction of PPA.

6.     Defendant A. Bayus, Inc. is an active, for-profit Kentucky corporation with its principal place of business at 13050 Magisterial Drive, Suite 102, Louisville, KY 40223.  Bayus-Evola Architects is an assumed name of A. Bayus, Inc., and it is an active Kentucky Assumed Name Corporation with its principal place of business at 2908 Eastpoint Parkway, Louisville, KY 40223.  The United States alleges that A. Bayus, Inc. d/b/a Bayus-Evola Architects was involved in the design and construction of PPA.

7.     Defendant James A. Hall d/b/a James A. Hall Builder d/b/a Hall Contracting and d/b/a Hall Construction Company is or was a builder/developer with his principal place of business at 1700 Kensington Place, Louisville, KY 40205.  James A. Hall d/b/a James A. Hall Builder d/b/a Hall Contracting and d/b/a Hall Construction Company was involved in the design and construction of PPA.  By order of the Court on October 20, 2011, Scott Hall, Executor of the Estate of James A. Hall, was substituted for the late James A. Hall, as a defendant in this action.

8.     Defendant A. Stanley Willett d/b/a Willett Engineering Company is an engineer who is or was registered with the state of Kentucky with his principal place of business at 4134 South Fifth Street, Louisville, KY 40214.  He was involved in the design and construction of PPA.

9. Defendant Mindel, Scott & Associates, Inc. is an active, for-profit Kentucky corporation with its principal place of business at 5151 Jefferson Boulevard, Louisville, KY 40219. Mindel, Scott & Associates, Inc. was involved in the design and construction of PPA.

## C. Relevant Requirements of the Fair Housing Act

10. The FHA provides that, for non-elevator residential buildings with four or more dwelling units, all ground-floor units that are designed and constructed for first occupancy after March 13, 1991, are "covered multifamily dwellings" and must include certain basic features of accessible and adaptive design to make such units accessible to or adaptable for use by a person who has or develops a disability. 42 U.S.C. §§ 3604(f)(3)(C) and (f)(7)(B).

11. The accessible and adaptive design provisions of the FHA require that for covered multifamily dwellings: (i) the public use and common use portions of such dwellings are readily accessible to and usable by persons with a disability; (ii) all the doors designed to allow passage into and within all premises within such dwellings are sufficiently wide to allow passage by persons with a disability using wheelchairs; (iii) all premises within such dwellings contain the following features of adaptive design: (I) an accessible route into and through the dwelling; (II) light switches, electrical outlets, thermostats, and other environmental controls in accessible locations; (III) reinforcements in bathroom walls to allow later installation of grab bars; and (IV) usable kitchens and bathrooms such that an individual using a wheelchair can maneuver about the space. 42 U.S.C. § 3604(f)(3)(C). These features are referred to herein as the "Accessible Design Requirements."

12. For the purposes of this Consent Order, the parties agree that PPA was designed and constructed for first occupancy after March 13, 1991, and therefore all of the ground-floor units in non-elevator buildings at PPA are "covered multifamily dwellings" within the meaning of the FHA, 42 U.S.C. §§ 3604(f)(7)(A) and (B). As such, those units and the public and common use areas including the accessible pedestrian routes at PPA must comply with the Accessible Design Requirements of 42 U.S.C. § 3604(f)(3)(C).

## D. Park Place Apartments ("PPA")

13. PPA is an apartment and rental townhome property that was constructed after March 13, 1991, and comprises 46 two-story, 6-unit apartment non-elevator buildings, and 6 non-elevator townhome buildings. It contains 138 "covered multifamily dwellings." The ground-floor apartments and the public and common use areas of Park Place Apartments, which include a leasing office, a clubhouse, a swimming pool, pedestrian walkways, mailboxes, and parking spaces, are subject to the Accessible Design Requirements of the FHA, 42 U.S.C. § 3604(f)(3)(C).

14. The United States has inspected PPA and has specifically identified alleged failures to meet the Accessible Design Requirements at this property. The United States alleges that, among other things, (a) there are routes from the public parking areas to numerous building

entrances with abrupt level changes in excess of 1/4" (such as steps and barrier curbs), running slopes greater than 5.0% and cross slopes greater than 2.0%; many curb ramps on these routes have running slopes in excess of 8.33% and cross slopes in excess of 2.0%; (b) there are buildings without accessible resident or visitor parking on an accessible route to the building entrance; (c) public and common use areas such as dumpsters and mail kiosks lack accessible features for persons who use wheelchairs, and such public and common use areas are on a route with excessive slopes and abrupt level changes in excess of 1/4"; (d) the maneuvering surface at the primary entry door to certain ground floor units slopes away from the door in excess of 1.0%, and there are abrupt level changes in excess of 1/4" at the exterior side of the threshold; (e) the head height on routes is reduced to less than 80" by the unprotected underside of porch lights at building entrance areas; (f) doors to many bathrooms, bedrooms, and walk-in-closets are not sufficiently wide for passage by a person using a wheelchair or other mobility aid; (g) routes within the dwellings are not sufficiently wide for passage by a person using a wheelchair or other mobility aid; (h) some kitchens and bathrooms are not designed so that an individual using a wheelchair can maneuver about them; and (i) thermostat controls are mounted above the maximum reach of a wheelchair user.

### E.    Consent of the Parties to Entry of this Order

15.    Defendants Kevin Cogan, Doris Cogan, Edwynn Burckle, George Clark, Scott Hall, Executor of Estate of James Hall (hereafter "Owner/Developer Defendants") agree to bring PPA into compliance with the FHA as set forth herein.

16.    The parties agree that this Court has jurisdiction over the subject matter of this case pursuant to 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. § 3614(a).  The parties further agree that this controversy should be resolved without further proceedings and without an evidentiary hearing or a trial.

17.    As indicated by the signatures appearing below, the parties agree to the entry of this Consent Order.

**It is hereby ORDERED, ADJUDGED, and DECREED**:

## II.  GENERAL INJUNCTION

18.    Defendants and each of their officers, employees, agents, successors and assigns, and all other persons in active concert or participation with them are enjoined from discriminating on the basis of disability as prohibited by the FHA, 42 U.S.C. §§ 3604(f)(1) - (3).

## III.  CORRECTIVE ACTIONS/RETROFITS

### A.    Access to PPA

19.    Owner/Developer Defendants agree to allow access to the common and public use

- 4 -

areas of PPA and, to the extent possible, access to PPA unit interiors, for the purpose of planning, evaluating, and performing any modification required under this Order, and for the purpose of interviewing or meeting with residents or tenants at PPA to aid in the implementation or completion of this Order.

**B.      Retrofits to Accessible Pedestrian Routes**

20.      As soon as reasonably possible, but by no later than July 15, 2012, Owner/Developer Defendants will complete the retrofits to make the Accessible Pedestrian Routes identified in <u>Appendix A</u> compliant with the FHA and the FHA Guidelines in accordance with the Route Inspection Protocol, separately agreed to by the United States and the Owner/Developer Defendants and described in **Section VI**, <u>infra.</u>

**C.      Retrofits to Public and Common Use Areas**

21.      As soon as reasonably possible, but by no later than 12 months from the entry of this Order, Owner/Developer Defendants will complete the retrofits to the public and common use areas of PPA listed in <u>Appendix B</u> to bring the public and common use areas of PPA into compliance with the FHA and FHA Guidelines, and where applicable, with the Route Inspection Protocol.

**D.      Retrofits to Ground-Floor Dwelling Unit Interiors**

22.      As soon as reasonably possible, but by no later than 12 months from the entry of this Order, Owner/Developer Defendants will complete all retrofits as described in <u>Appendix C</u> to the interiors of 69 covered multifamily dwellings at PPA to bring these unit interiors into compliance with the FHA and the FHA Guidelines in accordance with the Interior Inspection Protocol separately agreed to by the United States and the Owner/Developer Defendants and described in **Section VI**, <u>infra.</u>  As soon as reasonably possible, but by no later than 24 months from the entry of this Order, Owner/Developer Defendants will complete all retrofits as described in <u>Appendix C</u> to the interiors of all covered multifamily dwellings at PPA to bring these unit interiors into compliance with the FHA and the FHA Guidelines in accordance with the Interior Inspection Protocol.

23.      Within ten (10) days from the date of the entry of this Order, and within ten (10) days of the first anniversary of this Order, Owner/Developer Defendants shall provide a notice that is substantially equivalent to <u>Appendix E</u> to PPA residents in ground-floor apartment units. The notice shall inform PPA residents that (1) the unit does not meet the Accessible Design Requirements of the FHA; (2) the unit must be retrofitted within twenty four (24) months; (3) the resident can schedule the retrofits; (4) the retrofits will be performed at no cost to the resident; and (5) temporary relocation expenses, if necessary, will be provided at no cost to the resident.

24.      PPA residents shall request the retrofits in writing, and requests shall be granted by Owner/Developer Defendants on a first come, first served basis.  Owner/Developer

- 5 -

Defendants shall complete the retrofits within forty-five (45) days from the date on which the retrofits were requested by a resident, with such deadline being subject to paragraph 51 of this Consent Order.

## IV.  INCONVENIENCE AND OVERNIGHT STAYS FOR RETROFITTING UNIT INTERIORS

25.    Owner/Developer Defendants shall endeavor to minimize inconvenience to residents in scheduling and performing retrofits required by this Order to unit interiors at PPA.

26.    Owner/Developer Defendants will offer any resident of a unit scheduled to undergo a retrofit who will be dislocated from the unit for more than twenty-four (24) hours consecutively a similarly sized furnished unit at PPA at no cost.  In the event that a similarly sized furnished unit at PPA is not available, Owner/Developer Defendants will pay the resident the applicable government per diem rate for food and lodging for the local area (as available at www.gsa.gov – click on "per diem rates" under travel) for each day of undue inconvenience or hardship for the resident(s).  Such payment shall be made prior to the commencement of any retrofit work on the resident's unit, so that the resident can use the money to obtain alternative living accommodations and food while dislocated.

## V.  NOTICE OF RETROFITS TO THE ACCESSIBLE PEDESTRIAN ROUTES AND TO THE PUBLIC AND COMMON USE AREAS

27.    Within ten (10) days of the entry of this Order, Owner/Developer Defendants shall provide written notice to all residents/tenants at PPA stating that the retrofits required by this Order will be performed to the accessible pedestrian routes and to the public and common use areas of PPA.  Such notice shall conform to Appendix D.  Owner/Developer Defendants shall certify to the United States in writing that the notices have been distributed and shall describe the manner in which they were distributed within ten (10) days after such distribution.

## VI.  NEUTRAL INSPECTOR

28.    Owner/Developer Defendants shall enter into a contract with a neutral inspector approved by the United States ("Inspector") to conduct on-site inspections of the retrofits that have been performed under this Order to determine if they have been completed in accord with the specifications in this Order's Appendices A, B, and C, the Interior Retrofit Protocol and the Route Inspection Protocol that describe the retrofits for the properties.  The Inspector shall have expertise in the design and construction requirements of the FHA Guidelines.

29.    An inspection of PPA shall take place within thirty (30) days of the completion of all of the retrofits to the units, the accessible pedestrian routes, and the public and common use areas at PPA, or as soon thereafter as practicable.  Owner/Developer Defendants shall give the United States at least three (3) weeks' notice of the inspection and shall give the United States an opportunity to have its representative(s) present for the inspection.

30.     The inspections of the Accessible Pedestrian Routes, Public and Common Use Areas and dwelling unit interiors will be conducted by the Inspector in accordance with this Order and the relevant Appendices.  The inspections of the Accessible Pedestrian Routes will also be conducted by the Inspector in accordance with the written Route Inspection Protocol separately agreed to by Owner/Developer Defendants and the United States which will be provided to the Inspector.  The inspections of the dwelling units will also be conducted by the Inspector in accordance with the written Interior Inspection Protocol separately agreed to by Owner/Developer Defendants and the United States which will be provided to the Inspector.

31.     The Inspector shall set out the results of the inspection of PPA, including deficits if any, in writing and shall send that report to counsel for Owner/Developer Defendants and for the United States.[1]  The Inspector shall take digital photographs of any deficiencies identified at PPA.  If the inspection indicates that not all of the required retrofits have been made as specified in the Appendices A, B, and C, Interior Inspection Protocol or the Route Inspection Protocol, Owner/Developer Defendants will correct any deficiencies within sixty (60) days and shall pay for another inspection by the same Inspector to certify that the deficiencies have been corrected.  This process shall continue until the Inspector certifies that all of the necessary retrofits have been made.  Owner/Developer Defendants shall pay all of the Inspector's reasonable costs associated with these inspections, and such payments shall be made without regard to the Inspector's findings.  Upon reasonable notice to Owner/Developer Defendants, representatives of the United States shall be permitted to inspect the retrofits made by Owner/Developer Defendants in accordance with this Consent Order or the third-party inspection reports provided for in this Order, to ensure compliance; provided, however, that the United States shall endeavor to minimize any inconvenience caused by such inspections.

## VII.  TRANSFER OF INTEREST IN PROPERTIES

32.     The sale, foreclosure, or any other transfer of ownership, in whole or in part, whether voluntary or involuntary, of PPA shall not affect Owner/Developer Defendants' continuing obligation to retrofit PPA as specified in this Order.  Should an Owner/Developer Defendant decide to sell or transfer ownership of PPA, in whole or in part, or any portion thereof, prior to the completion of the retrofits specified in Appendices A , B, and C of this Order, the Owner/Developer Defendant will at least thirty (30) days prior to completion of the sale or transfer: (a) provide to each prospective buyer written notice that PPA is subject to this Order, including specifically the Owner/Developer Defendant's obligations to complete required

---

[1]  For purposes of this Order, counsel for the United States is Chief, Housing and Civil Enforcement Section, Civil Rights Division, United States Department of Justice, 950 Pennsylvania Avenue, NW Building – G St., Washington, D.C. 20530, Attn: DJ# 175-31-133, or as otherwise directed by the United States.  All reports mentioned in this Order shall be sent to that address via overnight courier.

retrofit work and to allow inspections, along with a copy of this Order; and (b) provide to the United States, by facsimile and first-class mail, written notice of the intent to sell or transfer ownership, along with a copy of the notice sent to each buyer, and each buyer's name, address and telephone number.

## VIII.  NO RAISING OF RENTS OR FEES

33.     Owner/Developer Defendants, their agents and affiliated companies, may not raise the rent or fees of any dwelling unit, or demand any deposit or other fee for a dwelling unit at PPA solely because of contemplated or completed retrofits required by this Order.

## IX.  NON-DISCRIMINATION IN FUTURE DESIGN AND CONSTRUCTION

34.     For the duration of this Order, Owner/Developer Defendants shall maintain, and provide to the United States, upon request, the following information and statements regarding any other covered multifamily dwellings intended to be purchased, developed, built, designed, and/or engineered in whole or in part, by any of them or by any entities in which they have a position of control as an officer, director, member, or manager, or have a ten-percent (10%) or larger ownership share, provided, however, that such information and statements need to be maintained and/or provided only on projects in which a defendant is actually involved, not on those projects in which a defendant bids or expresses an interest, but does not become finally involved:

    a.    the name and address of the property;

    b.    a description of the property and the individual units;

    c.    the name, address, and telephone number of the civil engineer(s) involved with the project;

    d.    a statement from the civil engineer(s) involved with the project acknowledging and describing his/her knowledge of and training in the requirements of the Fair Housing Act, and in the field of accessible site design and certifying that he/she has reviewed the engineering documents for the project and that the design specifications therein fully comply with the requirements of the FHA and the FHA Guidelines;

    e.    the name, address and telephone number of the architect(s) involved with the property;

    f.    a statement from all architect(s) who are employed or retained by any defendant and are involved with the project, acknowledging and describing his/her knowledge of and training in the requirements of the FHA, 42 U.S.C. §§ 3406(f)(1), (f)(2), and (f)(3)(C), the requirements of the FHA Guidelines, and in the field of accessible site design and certifying that he/she has reviewed the architectural plans for the property and that the design specifications therein fully comply with the requirements of the FHA and the FHA Guidelines;

    g.    if the engineering documents or architectural plans are revised, and the revisions could have any impact on the accessibility of the dwellings or complex, each of

the defendants shall obtain, maintain, and provide to the United States upon request, a statement from the site engineer(s) or architect(s), who are employed or retained by any defendant and are involved with the project, as applicable, that all specifications in the revised engineering documents or architectural plans, as pertinent, comply with the requirements of the FHA and the FHA Guidelines.

35.     For the duration of this Order, Defendants A. Bayus, Inc., Mindel, Scott & Associates, Inc., and A. Stanley Willett[2] (hereafter "Design Defendants") will maintain, and provide to the United States, the following information and statements for any other covered multifamily dwellings where designs are released or used for construction, filed with governmental agencies, or constructed, in whole or in part, by them or by any entities in which they have a position of control as an officer, director, member, or manager, or have a ten-percent (10%) or larger ownership share, provided, however, that such information and statements need to maintained and/or provided only on properties in which he/she is actually involved, not on those properties in which a Design Defendant bids or expresses an interest, but does not become finally involved:

   a.     the name and address of the property;
   b.     a description of the property and the individual units; and
   c.     a statement certifying that he/she has reviewed the plans prepared for the property and that the design specifications therein fully comply with the requirements of the FHA and the FHA Guidelines, where applicable; and
   d.     if the plans are revised, and the revisions could have any impact on the accessibility of the dwellings or property, he/she will obtain, maintain, and provide to the United States upon request, a statement that all specifications in the revised plans, as pertinent, comply with the Accessible Design Requirements of the FHA and the FHA Guidelines, where applicable.

## X.  PAYMENTS TO AGGRIEVED PERSONS

36.     Owner/Developer Defendants will pay the sum of TWO HUNDRED SEVENTY FIVE THOUSAND DOLLARS ($275,000) to the following aggrieved persons identified by the United States.  Owner/Developer Defendants will pay the sum of ONE THOUSAND DOLLARS

---

[2] Defendant A. Stanley Willett has taken affirmative steps to terminate his engineering license and has agreed to permanently cease from performing any work in the design, construction, or engineering of any covered multifamily dwellings.  So long as Defendant Willett remains unlicensed and abides by his agreement to perform no such work, he will be relieved from performing any obligations under paragraphs 35, 38-41, and 44.  In the event Defendant Willett obtains an engineering license or otherwise performs any work in the design, construction, or engineering of any covered multifamily dwellings, he will immediately notify the United States, and will be required perform immediately all obligations under this Order, including the obligations in paragraphs 35, 38-41, and 44.

($1,000) to each aggrieved person identified below within ten (10) days of the date of entry of this Order by sending counsel for the United States individual checks, payable to the order of each identified victim.  Owner/Developer Defendants will pay the remaining balance owed to aggrieved persons identified below by January 3, 2012, by sending counsel for the United States individual checks, payable to the order of the identified victims, so that the victims receive payment in the total amounts identified below.

| | | |
|---|---|---|
| 1. | Lisa Whitus: | $41,000.00 |
| 2. | Mary Franklin: | $26,000.00 |
| 3. | Joseph Asvestas: | $26,000.00 |
| 4. | Elaine McMahan: | $21,000.00 |
| 5. | Kenneth McMahan: | $21,000.00 |
| 6. | Kenneth Crawford: | $21,000.00 |
| 7. | Porter Slaughter: | $16,000.00 |
| 8. | Shirley Horn: | $16,000.00 |
| 9. | April Hayden: | $16,000.00 |
| 10. | Debra Lee: | $16,000.00 |
| 11. | Joyce Jackson: | $6,000.00 |
| 12. | Charles Lee: | $6,000.00 |
| 13. | Sue Sweeney: | $6,000.00 |
| 14. | James Woodford: | $6,000.00 |
| 15. | Senid Omerovic: | $6,000.00 |
| 16. | Jackie Brown: | $4,000.00 |
| 17. | Sabina Omerovic: | $4,000.00 |
| 18. | George Asvestas: | $4,000.00 |
| 19. | Estate of Marvin Lee: | $2,000.00 |

| 20. | Estate of Frederic Sanders: | $2,000.00 |
| 21. | Fred Malafronte: | $1,000.00 |
| 22. | Leslie Saksefsky: | $1,000.00 |
| 23. | Estate of Norbert Saksefsky: | $1,000.00 |
| 24. | Shirley Collins: | $1,000.00 |
| 25. | Andrew Webb: | $1,000.00 |
| 26. | Doris Woodford: | $1,000.00 |
| 27. | Ronald Jackson: | $1,000.00 |
| 28. | Gerald Collins: | $1,000.00 |
| 29. | Kenneth Webster: | $1,000.00 |

37.     The United States will retain in its possession the check for each identified aggrieved person until that person has executed a written release, in the form of <u>Appendix H</u>, of all claims, legal or equitable, that he or she might have against any and all Defendants relating to the claims asserted in this lawsuit.

## XI.  EDUCATIONAL PROGRAM

38.     Within thirty (30) days of the entry of this Order, each defendant shall provide a copy of this Order to all their current agents and employees involved in the design and/or construction of PPA and secure the signed statement from each agent or employee acknowledging that he or she has received and read the Order, and has had an opportunity to have questions about the Order answered.  This statement shall be substantially similar to the form of <u>Appendix F</u>.

39.     During the term of this Consent Order, within thirty (30) days after the date he or she commences an agency or employment relationship with a defendant, each new agent or employee involved in the design and/or construction of PPA or other covered multifamily dwelling property will be given a copy of this Order and be required to sign the statement acknowledging that he or she has received and read the Order, and has had an opportunity to have questions about the Order answered.  This statement shall be substantially similar to the form of <u>Appendix F</u>.

40.     Defendants shall also ensure that they and their employees and agents who have primary management authority over the design and/or construction of covered multifamily

- 11 -

dwellings have a copy of, are familiar with, and personally review, the Fair Housing Accessibility Guidelines, 56 Fed. Reg. 9472 (1991) and the United States Department of Housing and Urban Development, Fair Housing Act Design Manual, A Manual to Assist Builders in Meeting the Accessibility Requirements of the Fair Housing Act, (August 1996, Rev. April 1998).  Defendants and all employees and agents whose duties, in whole or in part, involve the management, sale and/or rental of multifamily dwellings at issue in this case shall be informed of those portions of the FHA that relate to accessibility requirements, reasonable accommodations, and reasonable modifications.

41.     Within ninety (90) days of the entry of this Consent Order, Defendants and all employees and agents whose duties, in whole or in part, involve or will involve primary management authority over the development, design and/or construction of multifamily dwellings shall undergo training on the design and construction requirements of the FHA, unless they have already had similar training within the last (4) four years.[3]  The training shall be conducted by a qualified individual who has been previously approved by the Department of Justice, and any expenses associated with this training shall be borne by Defendants.  Defendants shall provide to the United States, within thirty (30) days after the training, the name(s), address(es) and telephone number(s) of the trainer(s); copies of the training outlines and any materials distributed by the trainers; and certifications executed by all Defendants and covered employees and agents confirming their attendance, in a form substantially equivalent to Appendix G.

## XII.  NOTICE OF NON-DISCRIMINATION POLICY

42.     Within ten (10) days of entry of this Consent Order, Owner/Developer Defendants shall post and prominently display in the sales or rental offices of PPA a poster no smaller than 10 by 14 inches indicating that all dwellings are available for rental on a nondiscriminatory basis.  A poster that comports with 24 C.F.R. Part 110 will satisfy this requirement.

43.     All advertising in newspapers and all pamphlets, brochures and other promotional literature regarding PPA or any new complexes that any defendant may develop or construct, shall contain, in a conspicuous location, a statement that the dwelling units include features for persons with disabilities required by the federal Fair Housing Act .

## XIII.  NOTIFICATION AND DOCUMENT RETENTION REQUIREMENTS

44.     In addition to all other reporting required herein, within one hundred eighty (180)

---

[3]  The educational program provided to employees not engaged in design, construction or maintenance, such as sales and rental employees, may focus on the portions of the law that relate generally to accessibility requirements as opposed to technical design and construction requirements.

days after the date of entry of this Consent Order, Defendants will submit to the United States an initial report containing the requirement reported by paragraphs 34-35, and containing the signed statements of Defendants and their employees and agents who have completed the training program specified in paragraph 41 of this Consent Order.  Thereafter during the term of this Order, Defendants will, on the anniversary of the entry of this Order, submit to the United States a compliance report detailing their compliance with this Order, including details on the retrofitting and inspections of the retrofits at PPA, the reporting required by paragraphs 34-35 on the future design and construction, and containing the signed statements of new employees and agents that, in accordance with paragraph 39 of this Consent Order, they have received and read the Order, and had an opportunity to have questions about the Order answered, except that the last compliance report will be due sixty (60) days prior to the anniversary.

45.     During the term of this Consent Order, Owner/Developer Defendants shall advise the United States in writing within fifteen (15) days of receipt of any written administrative or legal fair housing complaint against PPA, or against any employee or agent of Owner/Developer Defendants working at or for PPA, regarding discrimination on the basis of disability in housing. Upon reasonable notice, Owner/Developer Defendants shall also provide the United States all information it may request concerning any such complaint.  Owner/Developer Defendants shall also advise counsel for the United States, in writing, within fifteen (15) days of the resolution of any complaint.

46.     During the term of this Consent Order, Defendants are required to preserve all records related to this Consent Order, related to PPA, and to any other covered multifamily dwellings designed, constructed, owned, operated, or acquired by them during the duration of the Consent Order.  Upon reasonable notice to Defendants, representatives of the United States shall be permitted to inspect and copy any records of Defendants or inspect PPA and any properties or dwelling units under the control of Defendants bearing on compliance with this Consent Order at any and all reasonable times, provided, however, that the United States shall endeavor to minimize any inconvenience to Defendants from such inspections.

## XIV.  DURATION OF CONSENT ORDER AND TERMINATION OF LEGAL ACTION

47.     This Consent Order shall remain in effect for three (3) years after the date of its entry.  By consenting to entry of this Order, the parties agree that in the event that a defendant engages in any future conduct occurring after entry of this Order that leads to a determination of a violation of the FHA, such conduct shall constitute a "subsequent violation" pursuant to 42 U.S.C. § 3614(d)(1)(C)(ii).

48.     The Court shall retain jurisdiction for the duration of this Order to enforce the terms of the Order, at which time the case shall be dismissed with prejudice.  The United States may move the Court to extend the duration of the Order in the interests of justice.

49.     The United States and Defendants shall endeavor, in good faith, to resolve informally any differences regarding interpretation of and compliance with this Order prior to

bringing such matters to the Court for resolution.  However, in the event of a failure by a defendant to perform, in a timely manner, any act required by this Order or otherwise for their failure to act in conformance with any provision thereof, the United States may move this Court to impose any remedy authorized by law or equity, including, but not limited to, an order requiring performance of such act or deeming such act to have been performed, and an award of any damages, costs, and reasonable attorney's fees which may have been occasioned by the violation or by the failure to perform.

## XV.  APPLICATION OF CONSENT ORDER

50     The parties agree that this Consent Order applies only to PPA and, as specified, to Defendants' future design and construction (see Section IX).  The parties agree that this Consent Order does not release Defendants from any claims by the United States concerning any other covered multifamily dwellings not identified and addressed herein, including any previously designed and constructed dwellings.

## XVI.  TIME FOR PERFORMANCE

51.     Any time limits for performance imposed by this Consent Order may be extended by the mutual written agreement of the United States and the relevant defendant or defendants.

## XVII.  COSTS OF LITIGATION

52.     Each party to this litigation will bear its own costs and attorney's fees associated with this litigation.

December 7, 2011

**Charles R. Simpson III, Judge**
**United States District Court**

- 14 -

The undersigned apply for and consent to the entry of this Consent Order:

*For the United States:*

THOMAS E. PEREZ
Assistant Attorney General
Civil Rights Division

DAVID J. HALE
United States Attorney
Western District of Kentucky


  s/ Ryan G. Lee_____
STEVEN H. ROSENBAUM, Chief
MICHAEL S. MAURER, Deputy Chief
RYAN G. LEE, Trial Attorney
United States Department of Justice
Civil Rights Division
Housing and Civil Enforcement Section
950 Pennsylvania Avenue, NW
Washington, D.C.  20530


  s/ Ben Schecter_____
BEN SCHECTER
Assistant United States Attorney
Western District of Kentucky

*For Defendants Kevin D. Cogan, Edwynn Burckle, George E. Clark, Doris Cogan:*


  s/ Steven M. Crawford
STEVEN M. CRAWFORD
Frost Brown Todd LLC
400 West Market Street, 32nd Floor
Louisville, Kentucky  40202


*For Defendant Scott Hall, Executor for Estate of James A. Hall:*


  s/ Erwin Roberts
ERWIN ROBERTS
600 W Main St
Louisville, KY 40202


*For Defendant Mindel, Scott & Associates, Inc.:*


  s/ Jefferson C. Orr
JEFFERSON C. ORR
Smith, Cashion, & Orr, PLC
231 Third Avenue North
Nashville, TN  37201


*For Defendant A. Stanley Willett:*


  s/ Brian Hodge
BRIAN HODGE
239 South Fifth Street, Suite 414
Louisville, KY 40202


*For Defendant A. Bayus, Inc.:*


  s/ Robert M. Brooks
ROBERT M. BROOKS
Boehl Stopher & Graves, LLP
400 West Market Street, Suite 2300
Louisville, KY  40202

**APPENDIX A**

**ACCESSIBILITY MODIFICATIONS TO THE ACCESSIBLE PEDESTRIAN ROUTES
AND TO THE PUBLIC AND COMMON USE AREAS AT
PARK PLACE APARTMENTS**

**(Accessible Route Plan on following page)**

# APPENDIX A

# PARK PLACE APARTMENTS (PPA)



PARK PLACE
APARTMENTS
ACCESSIBLE ROUTE RETROFITS (PPP)
03-01-11

GRAPHIC SCALE
1 INCH = 50 FT.

**APPENDIX B**

**ACCESSIBILITY MODIFICATIONS TO PUBLIC AND COMMON USE AREAS
AT PARK PLACE APARTMENTS**

I.   As set forth in the Consent Order and this Appendix, Owner/Developer Defendants will retrofit the public and common use areas at Park Place Apartments ("PPA") in compliance with the Fair Housing Act, the Accessible Design Requirements of the FHA, the Fair Housing Accessibility Guidelines, ANSI A117.1-1986, the Fair Housing Design Manual, and the Route Inspection Protocol.

II.   Defendants will retrofit the landing at the primary entrance at units listed below so that the primary entrance of the units will not be more than ½" below the finished floor inside the unit. [M #169; FHAG Req. 4(6), FHDM pp. 4.11-4.13]

400 Fallon Way, Apts. 1, 2, 3
410 Fallon Way, Apts. 1, 2, 3
420 Fallon Way, Apts. 1, 2, 3
430 Fallon Way, Apts. 1, 2, 3
450 Fallon Way, Apts. 1, 2
460 Fallon Way, Apts. 1, 2, 3
470 Fallon Way, Apts. 1, 2, 3

7300 Cranfill Way, Apts. 1, 2, 3
7310 Cranfill Way, Apts. 1, 2, 3
7320 Cranfill Way, Apts. 1, 2, 3
7331 Cranfill Way, Apts. 1, 2, 3
7401 Cranfill Way, Apts. 1, 2, 3
7410 Cranfill Way, Apts. 1, 2, 3
7411 Cranfill Way, Apts. 1, 2, 3
7421 Cranfill Way, Apts. 1, 2, 3
7431 Cranfill Way, Apts. 1, 2, 3

7410 Candace Way, Apts. 1, 2, 3
7411 Candace Way, Apts. 1, 2, 3
7420 Candace Way, Apts. 1, 2, 3
7421 Candace Way, Apts. 1, 2, 3
7430 Candace Way, Apts. 1, 2, 3
7431 Candace Way, Apts. 1, 2, 3

7330 Cogan Blvd., Apts. 1, 2, 3
7400 Cogan Blvd., Apts. 1, 2, 3

7500 Connor Way, Apts. 1, 2, 3
7510 Connor Way, Apts. 1, 2, 3

7511 Connor Way, Apts. 1, 2
7520 Connor Way, Apts. 1, 2, 3
7531 Connor Way, Apts. 1, 2, 3
7540 Connor Way, Apts. 1, 2, 3
7541 Connor Way, Apts. 2, 3

III.    Owner/Developer Defendants will retrofit the locations of grills on the accessible routes so that there is one accessible grill in each of the following four general areas: Zachary Circle, Candace Way, Cogan Boulevard, and Cranfill Way [M #171; FHAG Req. 2].

IV.    Owner/Developer Defendants will retrofit the passageways on the routes to the ground-level units at the following buildings so that the wall mounted porch lights protrude no more than 4" into the circulation route with the bottom of the porch light 80" or higher in compliance with ANSI 1986, Section 4.4 [M ##173, 174; FHAG Req. 2, Sections 4.4.1 and 4.4.2].

400 Fallon Way
410 Fallon Way
420 Fallon Way
430 Fallon Way
440 Fallon Way
450 Fallon Way
460 Fallon Way
470 Fallon Way

7300 Cranfill Way
7310 Cranfill Way
7320 Cranfill Way
7321 Cranfill Way
7331 Cranfill Way
7400 Cranfill Way
7401 Cranfill Way
7410 Cranfill Way
7411 Cranfill Way
7421 Cranfill Way
7431 Cranfill Way
7441 Cranfill Way

7410 Candace Way
7411 Candace Way
7420 Candace Way
7421 Candace Way
7430 Candace Way
7431 Candace Way

7330 Cogan Blvd.

7400 Cogan Blvd.

7500 Connor Way
7510 Connor Way
7511 Connor Way
7520 Connor Way
7521 Connor Way
7530 Connor Way
7531 Connor Way
7540 Connor Way
7541 Connor Way

8702 Zachary Circle
8703 Zachary Circle
8704 Zachary Circle
8705 Zachary Circle
8706 Zachary Circle
8707 Zachary Circle
8708 Zachary Circle
8709 Zachary Circle
8711 Zachary Circle

V.     Owner/Developer Defendants will seek immediate approval from the U.S. Postal Service
       in writing to reassign mailboxes so that the key slots for all mailboxes serving ground-
       level units are within reach range of 48" above the ground for a forward approach or 54"
       above the ground for a parallel approach in compliance with ANSI 1986, Sections 4.2.5,
       4.2.6.  Defendants will provide the U.S. postal service with a copy of the Consent Order
       when seeking this approval, and Owner/Developer Defendants will copy the United
       States on all correspondence. [M ##162, 163; FHAG Req. 2, Section 4.25.3]

VI.    Owner/Developer Defendants will make retrofits at the dumpster/trash compactor on
       Cogan Blvd. by providing permanent trash receptacles that are accessible along with
       permanent mounted HC sign. [M ## 166, 167; FHAG Req. 2, Sections 4.25.3]

VII.   Owner/Developer Defendants will make the following retrofits to the exterior of the
       Clubhouse:

       A.     Retrofit the threshold at the primary entrance so that the threshold is no taller than
              ½" in compliance with FHAG Req., 2 and ANSI 1986, Section 4.13.8. [M #129]

       B.     Retrofit the flap on the rental brochure dispenser so that it is within 54" of the
              landing for a side reach in compliance with FHAG, Req. 2, ANSI 1986, Section
              4.25.3. [M #358]

       C.     Retrofit the gate hardware on the gate on the accessible route to the pool area so
              that it is within 48" of the floor in compliance with FHAG, Req. 2, ANSI 1986,

Section 4.13.9. [M #362]

    D.    Retrofit gate hardware on the gate on the accessible route to the pool area so that it is operable with one hand without tight grasping, pinching, or twisting of the wrist in compliance with FHAG, Req. 2, ANSI 1986 4.13.9. [M #364].

VIII.    Owner/Developer Defendants will retrofit the door at the Senior Manager's Office by posting a permanent sign on the door stating that the door is for employee-use only. [M ##138, 139]

IX.    Owner/Developer Defendants will make the following retrofits to the Clubhouse Men's Bathroom:

    A.    Retrofit so that there is a sign identifying the men's bathroom mounted on the wall adjacent to the latch and centered 60" above the floor. [M #141]

    B.    Retrofit so that the front end of the side grab bar is at least 54" from the rear wall in compliance with FHAG, Req. 2, ANSI 1986, Section 4.16.4. [M #142]

    C.    Retrofit so that the sidewall grab bar is at least 42" long in compliance with FHAG, Req. 2, ANSI 1986, Section 4.16.4. [M #143]

    D.    Retrofit so that the toilet paper dispenser is within 36" of the rear wall in compliance with FHAG, Req. 2, ANSI 1986, Section 4.16.6. [M #144]

    E.    Retrofit so that the toilet flush control is on the open side of the toilet in compliance with FHAG, Req. 2, ANSI 1986, Section 4.16.5. [M #145]

    F.    Retrofit so that the rear grab bar is at least 36" long in compliance with FHAG, Req. 2, ANSI 1986, Section 4.16.4. [M #146]

    G.    Retrofit so that locking mechanism is operable with one hand without tight grasping, pinching, or twisting of the wrist in compliance with FHAG, Req. 2, ANSI 1986, Section 4.13.9. [M #148]

X.    Owner/Developer Defendants will make the following retrofits to the Clubhouse Women's Bathroom:

    A.    Retrofit so that there is a sign identifying the women's bathroom mounted on the wall adjacent to the latch and centered 60" above the floor. [M #150]

    B.    Retrofit so that the front end of the side grab bar is at least 54" from the rear wall in compliance with FHAG, Req. 2, ANSI 1986, Section 4.16.4. [M #151]

    C.    Retrofit so that the sidewall grab bar is at least 42" long in compliance with FHAG, Req. 2, ANSI 1986, Section 4.16.4. [M #152]

> D.      Retrofit so that the toilet paper dispenser is within 36" of the rear wall in compliance with FHAG, Req. 2, ANSI 1986, Section 4.16.6. [M #153]
>
> E.      Retrofit so that locking mechanism is operable with one hand without tight grasping, pinching, or twisting of the wrist in compliance with FHAG, Req. 2, ANSI 1986, Section 4.13.9. [M #154]

XI.      Defendants will make the following retrofits to the Pool Area adjacent to the Clubhouse:

> A.      Retrofit the threshold at the Clubhouse corridor to the pool area so that the threshold is no taller than ½" in compliance with FHAG, Req. 2, ANSI 1986, Section 4.13.8 [M #156]
>
> B.      Retrofit the maneuvering space outside the Clubhouse corridor door to the pool area so that the maneuvering space at the door does not slope more than 2% in compliance with FHAG, Req. 2, ANSI 1986, Section 4.13.6. [M #157]
>
> C.      Retrofit the maneuvering space at the push side of the pool gate so that the maneuvering space slopes not more than 2% in compliance with FHAG, Req. 2, ANSI 1986, Section 4.13.6. [M #158]
>
> D.      Retrofit the drinking fountain serving the pool area so that it is accessible in compliance with FHAG, Req. 2, ANSI 1986, Section 4.15. [M #159]

**APPENDIX C**

**ACCESSIBILITY MODIFICATIONS TO DWELLING UNIT INTERIORS
AT PARK PLACE APARTMENTS**

I.      As set forth in the Consent Order and in this Appendix, Owner/Developer Defendants will retrofit the interiors of the units at Park Place Apartments (PPA) in compliance with the Fair Housing Act, the Accessible Design Requirements of the FHA, the Fair Housing Accessibility Guidelines, the Fair Housing Act Design Manual, and, where specified, with the Interior Retrofit Inspection Protocol, that are listed below.  These units comprise six types: (1) Apartment #2 at 410 Fallon Way, 850 sq. ft. 2 Bedroom, 2 Bathroom unit; (2) Apartment #2 at 8711 Zachary Circle, 886 sq. ft. 2 Bathroom, 2 Bathroom unit; (3) Apartment #1 at 8706 Zachary Circle, 962 sq. ft. 2 Bedroom, 2 Bathroom unit; (4) Apartment #1 at 8708 Zachary Circle, 962 sq. ft. 2 Bedroom, 2 Bathroom unit with code features; (5) Apartment #1 at 410 Fallon Way, 1,000 sq. ft. 2 Bedroom, 2 Bathroom unit; and (6) Apartment #3 at 7511 Connor Way, 1,000 sq. ft. 2 Bedroom, 2 Bathroom unit with code features.

II.     Owner/Developer Defendants shall make the following retrofits to the 2 Bedroom, 2 Bathroom unit types that are of the same type as the unit surveyed at Apartment #2 at 410 Fallon Way:

     A.     Retrofit the following doors by widening the doors so that they have a 32" nominal clear opening width:
          (1)     Door to the Hall Bath.
          (2)     Door to the Master Bedroom.
          (3)     Door to Bedroom #2.
     [Matrix ("M") ##7, 14, and 16; FHAG, Req. #3, guide (2), FHDM, pp. 3.3-3.6]

     B.     Retrofit the Hall Bath by reversing the swing of the door so that it swings into the hallway.  [M #8; FHAG, Req. #7, guide (2), FHDM pp. 7.39, 7.43]

     C.     Retrofit the Hall Bath by installing removable cabinet under lavatory with a finished floor under the lavatory and insulated pipes or alternatively by installing a hanging sink with insulated pipes.  [M #9, FHAG, Req. #7, guide (2), FHDM pp. 7.47-7.52]

     D.     Retrofit the thermostats so that they are mounted no more than 48" above the floor.  [M #2; FHAG, Req. #5; FHDM pp. 5.6, 5.7]

     E.     See Interior Retrofit Inspection Protocol for retrofits to Locations of Wall Outlets, Locations of Light Switches, and Locations of Toilets.

III.     Owner/Developer Defendants shall make the following retrofits to the 2 Bedroom, 2 Bathroom unit types that are of the same type as the unit surveyed at Apartment #2 at 8711 Zachary Circle:

A.   Retrofit the following doors by widening the doors so that they have a 32"
     nominal clear opening width:
     (1)   Door to the Hall Bath.
     (2)   Door to the Master Bedroom.
     (3)   Door to Bedroom #2.
     [M ##35, 42, and 47; FHAG, Req. #3, guide (2), FHDM, pp. 3.3-3.6]

B.   Retrofit the kitchen so that there is at least 30" x 48" of clear floor space at the
     kitchen sink. [M #31; FHAG, Req. #7, guide (1), FHDM pp. 7.4, 7.5, 7.12]

C.   Retrofit the Kitchen so that there is 30" by 48" clear floor space that is parallel
     and centered on the range by moving the range forward to be flush with the
     adjacent wing-wall, and providing counter backing between the back of the range
     and the wall.  [M #32, FHAG, Req. #7, guide (1), FHDM pp. 7.4, 7.5]

D.   Retrofit the Hall Bath by reversing the swing of the door so that it swings into the
     hallway.  [M #36; FHAG, Req. #7, guide (2); FHDM pp. 7.39, 7.43].

E.   Retrofit the Hall Bath by installing removable cabinet under lavatory with a
     finished floor under the lavatory and insulated pipes or alternatively by installing
     a hanging sink with insulated pipes.  [M ##37, 38; FHAG, Req. #7, guide (2),
     FHDM pp. 7.47-7.52].

F.   Retrofit electrical receptacle and light switch in Hall Bath mounted over the
     lavatory so that it is parallel to the clear floor space and between the ends of the
     clear floor space.  [M #40; FHAG, Req. #5, FHDM pp. 5.7, 5.8]

G.   Retrofit the thermostats so that they are mounted no more than 48" above the
     floor.  [M #28; FHAG, Req. #5, FHDM pp. 5.6, 5.7]

H.   See Interior Retrofit Inspection Protocol for retrofits to Abrupt Level Changes at
     Interior Side of Entry Door Thresholds, Locations of Wall Outlets, and Location
     of Toilets.

IV.  Owner/Developer Defendants shall make the following retrofits to the 2 Bedroom, 2
     Bathroom unit types that are of the same type as the unit surveyed at Apartment #1 at
     8706 Zachary Circle:

     A.   Retrofit the following doors by widening the doors so that they have a 32"
          nominal clear opening width:
          (1)   Door to the Hall Bath.
          (2)   Door to the Master Bedroom.
          (3)   Door to Bedroom #2.
          [M ##62, 69, and 71; FHAG, Req. #3, guide (2), FHDM, pp. 3.3-3.6]

B.       Retrofit the kitchen so that there is at least 30" x 48" of clear floor space at the kitchen sink.  [M #59; FHAG, Req. #7, guide (1), FHDM pp. 7.4, 7.5, 7.12]

C.       Retrofit the Kitchen so that there is 30" by 48" clear floor space that is parallel and centered on the range by moving the range forward to be flush with the adjacent wing-wall, and providing counter backing between the back of the range and the wall.  [M #60; FHAG, Req. #7, guide (1), FHDM pp. 7.4, 7.5]

D.       Retrofit the Hall Bath by reversing the swing of the door so that it swings into the hallway.  [M #63; FHAG, Req. #7, guide (2); FHDM pp. 7.39, 7.43].

E.       Retrofit the Hall Bath by installing removable cabinet under lavatory with a finished floor under the lavatory and insulated pipes or alternatively by installing a hanging sink with insulated pipes. [M ##64, 65; FHAG, Req. #7, guide (2), FHDM pp. 7.47-7.52]

F.       Retrofit electrical receptacle and light switch in Hall Bath mounted over the lavatory so that it is parallel to the clear floor space and between the ends of the clear floor space.  [M #67; FHAG, Req. #5, FHDM pp. 5.7, 5.8]

G.       Retrofit the thermostats so that they are mounted no more than 48" above the floor.  [M #56; FHAG, Req. #5; FHDM pp. 5.6, 5.7].

H.       See Interior Retrofit Inspection Protocol for retrofits to Abrupt Level Changes at Interior Side of Entry Door Thresholds, Locations of Wall Outlets, and Locations of Toilets.

V.       Owner/Developer Defendants shall make the following retrofits to the 2 Bedroom, 2 Bathroom unit types that are of the same type as the unit surveyed at Apartment #1 at 8708 Zachary Circle:

A.       Retrofit the following doors by widening the doors so that they have a 32" nominal clear opening width:
(1)      Door to the Hall Bath.
(2)      Door to Bedroom #2.
[M ##89, 92; FHAG, Req. #3, guide (2), FHDM, pp. 3.3-3.6]

B.       Retrofit the Kitchen so that there is 30" by 48" clear floor space that is parallel and centered on the range by moving the range forward to be flush with the adjacent wing-wall, and providing counter backing between the back of the range and the wall.  [M #87; FHAG, Req. #7, guide (1), FHDM pp. 7.4, 7.5].

C.       Retrofit electrical receptacle in Hall Bath mounted over the lavatory so that it is parallel to the clear floor space and between the ends of the clear floor space.
[M #90; FHAG, Req. #5, FHDM pp. 5.7, 5.8]

D.      Retrofit the thermostats so that they are mounted no more than 48" above the
        floor.  [M #83; FHAG, Req. #5, FHDM pp. 5.6, 5.7]

E.      See Interior Retrofit Inspection Protocol for retrofits to Abrupt Level Changes at
        Interior Side of Entry Door Thresholds.

VI.    Owner/Developer Defendants shall make the following retrofits to the 2 Bedroom, 2
       Bathroom unit types that are of the same type as the unit surveyed at Apartment #1 at 410
       Fallon Way:

A.      Retrofit the following doors by widening the doors so that they have a 32"
        nominal clear opening width:
        (1)     Door to the Hall Bath.
        (2)     Door to the Master Bedroom.
        (3)     Door to Bedroom #2.
        [M ##100, 108, and 110; FHAG, Req. #3, guide (2), FHDM, pp. 3.3-3.6]

B.      Retrofit the Hall Bath by reversing the swing of the door so that it swings into the
        hallway.  [M #101; FHAG, Req. #7, guide (2), FHDM pp. 7.39, 7.43]

C.      Retrofit the Hall Bath by installing removable cabinet under lavatory with a
        finished floor under the lavatory and insulated pipes or alternatively by installing
        a hanging sink with insulated pipes.  [M ##102, 103; FHAG, Req. #7, guide (2),
        FHDM pp. 7.47-7.52]

D.      Retrofit electrical receptacle and light switch in Hall Bath mounted over the
        lavatory so that it is parallel to the clear floor space and between the ends of the
        clear floor space.  [M #106; FHAG, Req. #5, FHDM pp. 5.7, 5.8]

E.      Retrofit the thermostats so that they are mounted no more than 48" above the
        floor.  [M #97; FHAG, Req. #5; FHDM pp. 5.6, 5.7]

F.      See Interior Retrofit Inspection Protocol for retrofits to Abrupt Level Changes at
        Interior Side of Entry Door Thresholds, Locations of Wall Outlets, and Locations
        of Toilets.

VII.   Owner/Developer Defendants shall make the following retrofits to the 2 Bedroom, 2
       Bathroom unit types that are of the same type as the unit surveyed at Apartment #3 at
       7511 Connor Way:

A.      Retrofit the door to the Hall Bath widening the doors so that they have a 32"
        nominal clear opening width.  [M #123; FHAG, Req. #3, guide (2), FHDM, pp.
        3.3-3.6]

B.      Retrofit electrical receptacle and light switch in Hall Bath mounted over the
        lavatory so that it is parallel to the clear floor space and between the ends of the

clear floor space.  [M #124; FHAG, Req. #5, FHDM pp. 5.7, 5.8]

C.      See <u>Interior Retrofit Inspection Protocol</u> for retrofits to Abrupt Level Changes at Interior Side of Entry Door Thresholds.

**APPENDIX D**

**NOTICE OF MODIFICATIONS TO THE ACCESSIBLE PEDESTRIAN ROUTES AND
TO THE PUBLIC AND COMMON USE AREAS AT
PARK PLACE APARTMENTS**

The federal Fair Housing Act requires that the accessible pedestrian routes and the public and common use areas at complexes such as Park Place Apartments have certain features of physical accessibility for persons with disabilities.

As a result of recent events, it has been brought to our attention that certain features of the accessible pedestrian routes and of the public and common areas of Park Place Apartments can be modified to provide greater accessibility for persons with disabilities, consistent with the accessibility requirements of the federal Fair Housing Act.   We welcome persons with disabilities as residents and guests at Park Place Apartments.  We are writing this notice to let you know that beginning on _____, 2012, contractors will be coming onto the property to begin the process of modifying certain aspects of the accessible pedestrian routes and of the public and common use areas.  We expect the process to last approximately _____ weeks.

Generally, the workers will modify or "retrofit" certain sidewalks, install curb cuts and ramps or modify existing ones, and eliminate some of the steps along certain pathways to certain ground-floor units (including the step into some units).  They will also be making some modifications to the mailboxes, swimming pool, the clubhouse, as well as to other areas, to make them more accessible to persons with disabilities.  We apologize for any inconveniences you may incur as a result of this work.

If you have any questions regarding these modifications, please contact us at _____

**APPENDIX E**

**NOTICE TO RESIDENTS**

Dear Resident:

This is to advise you that, as a result of a settlement in a case brought by the United States against the owners of this apartment complex, we have agreed to modify the ground-floor units at Park Place Apartments to provide greater accessibility for people with disabilities. Your unit is one of those that does not meet the accessible and adaptive design requirements of the Fair Housing Act.

Although your apartment unit will be retrofitted automatically within twenty-four (24) months, we want you to know that you may request to have your apartment modified now at no cost to you. The actual work will take no longer than ___ days and we will provide you with comparable alternative living arrangements during that time. In scheduling when the repairs will take place, we will take into account your preferences and your convenience.

You should be aware that this work must be completed within twenty-four (24) months regardless of your intention to stay in your apartment for a longer duration. Please let us know if you are interested in having the work done now and we will provide you with additional information.

The Management

**APPENDIX F**

**ACKNOWLEDGMENT OF RECEIPT OF CONSENT ORDER**

On _____, I received copies of and have read the Consent Order entered by the federal district court in <u>United States</u> v. <u>Cogan</u>, et al., 10cv533 (W.D. Ky.).  I have had all of my questions concerning the Consent Order and concerning the Fair Housing Act answered to my satisfaction.

_____
(Signature)

_____
(Print name)

_____
(Position)

_____
(Date)

**APPENDIX G**

**CERTIFICATION OF FAIR HOUSING TRAINING**

On _____, I attended training on the federal Fair Housing Act, including its requirements concerning physical accessibility for people with disabilities.  I have had all of my questions concerning the Fair Housing Act answered to my satisfaction.

_____
(Signature)

_____
(Print name)

_____
(Position)

_____
(Date)

**APPENDIX H**

**RELEASE OF ALL CLAIMS**

In consideration of and contingent upon the payment of the sum of _____ dollars ($                ), pursuant to the Consent Order entered in United States v. Cogan, et al., Case No. 10cv533, United States District Court, Western District of Kentucky, I hereby release and forever discharge the Defendants named in this action from any and all liability for any claims, legal or equitable, I may have against them arising out of the issues alleged in this action as of the date of the entry of that Consent Order.  I fully acknowledge and agree that this release of the Defendants shall be binding on my heirs, representatives, executors, successors, administrators, and assigns.  I hereby acknowledge that I have read and understand this release and have executed it voluntarily and with full knowledge of its legal consequences.

_____
(Signature)

NAME:        _____

ADDRESS:   _____

               _____

               _____

DATE:        _____

## APPENDIX I

## DECLARATION AND STATEMENT OF ABILITY TO COMPLETE RETROFITS

Defendants Kevin D. Cogan, Edwynn Burckle, the Estate of James A. Hall, and Doris Cogan ("Park Place Apartments Partnership") declare that these Defendants understand the nature and extent of the retrofits they must perform under this Consent Order and attached Appendices and have the financial capacity to complete all of the retrofits for which they are responsible under the Order and Appendices pursuant to the timetables set forth in the Order.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing declaration and statement of ability to complete retrofits is true and correct to the best of my knowledge.

_____
Kevin D. Cogan, in his capacity as General
Partner of Park Place Apartments Partnership